Homer HOWELL et al., Appellants,

v.

Mildred E. COLLIER et al., Appellees.

Homer HOWELL et al., Appellants,

v.

Benson G. LEICHHARDT et al., Appellees.

Court of Appeals of Kentucky.

June 17, 1955.

Rehearing Denied Oct. 21, 1955.

Joe B. Orr, Bell & Orr, Bowling Green, for appellants.

Aaron F. Overfelt, Bowling Green, for appellees.

CULLEN, Commissioner.

These appeals present a question of construction of KRS 160.045, which provides a method by which property annexed to a city may become a part of the city school district. The question is whether territory which is designated, defined or described as a separate unit in the annexation proceedings must be treated as an indivisible unit for the purpose of incorporation in the city school district, or whether smaller parcels or areas within such territory may be treated as units for the purpose of incorporation in the city school district. The lower court held that the smaller parcels or areas could be treated as units, and the appeals challenge that ruling.

The cases arise out of an annexation of territory by the City of Bowling Green, in 1950. The city annexed territory amounting to approximately three square miles in area, surrounding the city on three sides. Subsequently, groups of property owners at different points in the annexed area made designations of five relatively small territories which they proposed be placed in the

city school district. Petitions were circulated and more than 75 percent of the property owners in each of the five territories signed the petitions. The city board of education approved the petitions, but the county board of education refused to effect a transfer of the territories to the city district, whereupon the present actions were instituted by the property owners to compel the transfer. The county board of education has appealed from the judgments directing the transfer.

The controlling statute, KRS 160.045, is not free from ambiguity, and the question of construction is a difficult one. We quote the significant portions of the statute:

"(1) Whenever any territory in any municipality or any territory which may become incorporated in any municipality, is located in a county school district, the owners of real property in such territory are given the right to demand of the board of education of the county school district in which their property is located that said property should be placed in and become a part of the school district in which the greater part of said municipality is located and embraced; whether said school district be a county or independent school district.

"(2) If seventy-five percent of the owners of real property located in such territory in a county school district shall present a written petition to the board of education of the school district in which their property is located demanding of said board of education that their property be placed in another school district, the board of education of the school district in which said property is located shall proceed at once to place said property in the school district as demanded by said petitioners.

\* \* \* \* \* \*

"(5) The purpose of this section is to enable all property located within any municipally incorporated territory to be placed in one school district as

such procedure tends to promote school and civic spirit."

It will be observed that the statute provides that "the owners of real property in" the annexed territory shall have the right to demand that "their property" be placed in the city school district, which is subject to the construction that the right is individual or selective. However, when consideration is given to the requirement of subsection (2) that "seventy-five percent of the owners of real property located in such territory" must join in the petition, it is difficult to escape the conclusion that the annexed territory must be treated as a unit. If the right were individual or selective, the 75-percent provision would be meaningless, because any property owner by signing a petition could propose the placing of his property in the city district, and there would be no reason for him to be concerned about other property owners. The 75-percent provision seems necessarily to contemplate a territory defined by some authority or action other than that of the petitioning landowners, because there would be no reason for those owners desiring to be in the city district to include, in a territory designated by them, any dissenting owners. The situation is different from that of a public improvement district, such as a road district, water district, or drainage district, where those desiring to create the district might be required to include land of some dissenters in order to make the district practicable.

Some effect also must be given to the purpose of the statute as expressed in subsection (5), which is to enable "all property" located within any municipally incorporated territory to be placed in one school district. This expression of purpose indicates that all property in an annexed territory should as a matter of policy be brought into the city school district. The piece-meal bringing in of small, scattered parcels would not seem to conform to this policy.

Further support for the view that the statute intends that an annexed territory be treated as an indivisible unit for the pur-

pose of incorporation into the city school district may be found in a consideration of practicalities in application of the statute. If small, isolated parcels could be brought into the city district, substantial inconveniences would result in the administration of both the city district and the county district, in regard to tax assessment and collection, the conducting of school elections, and similar matters. There would be no basic pattern or system for determining the boundaries of the districts.

█ The history of the statute also may be considered as throwing some light on the question of construction. Prior to 1940, it was provided by statute that the boundaries of city school districts would automatically embrace territory added to the city by annexation. Section 4399–3, Carroll's Kentucky Statutes, 1936 Edition. In 1940, there was enacted what is now KRS 160.-050, providing for annexation of territory by city school districts. It was considered by the Statute Revision Commission that the latter statute impliedly repealed the provision of K.S. 4399–3 for automatic extension of boundaries, and in the Revision Bill of 1942 the provision believed to be impliedly repealed was omitted. In Thomas v. Spragens, 308 Ky. 97, 213 S.W.2d 452, this Court held that the provision for automatic extension of boundaries had been repealed. Accordingly, from 1940 until 1946 there was no method by which territory annexed to a city could be made a part of the city school district, except under KRS 160.050, which provides for joint action by the city and county school boards, approval of the Superintendent of Public Instruction, and a vote of the people in the territory.

In 1946, KRS 160.045 was enacted, originally applying only to school districts in cities of the fifth and sixth classes. In 1948, it was amended so as to apply to all city districts. Thus we find the legislature first abandoning automatic extension of city school district boundaries in favor of a method of adding territory by agreement of all interested parties, and then, later, providing an alternate, in-between method under which only the city district and the people in the territory are required to agree.

█ Considering the legislative history, we are led to the conclusion that KRS 160.050, which requires consent of the county school board and approval of the Superintendent of Public Instruction, was considered by the legislature to unduly impede the incorporation into a city school district of territory annexed to the city, and accordingly the legislature provided, by KRS 160.045, for such incorporation by consent of the city school district and the property owners alone. The object of KRS 160.045 was to encourage the making of the city school district boundaries coextensive with those of the city. However, the legislature continued to recognize the practical problems that arise when property is transferred from one school district to another, and therefore KRS 160.050 was retained in force to apply in instances where the adding of territory to the city school district is not designed presently to accomplish the making of the boundaries of the city school district coextensive with those of the city.

█ We construe KRS 160.050 as applying where a city school district proposes to add territory outside the city limits, or territory within the city limits not coextensive with an annexed area of the city. We construe KRS 160.045 as authorizing only the incorporation of such areas annexed to a city as are coextensive with an area designated, defined or described as a separate territory in the annexation proceedings by the city.

The judgments are reversed, with directions to enter judgments dismissing the complaints.